**In the Matter of J.B.L.**

No. 09–09–00217–CV.

Court of Appeals of Texas, Beaumont.

Submitted June 3, 2010.

Decided Aug. 5, 2010.

Jay M. Wright, Conroe, for appellant.

David Walker, County Atty., Carolyn Atkinson, Christopher Allen, Asst. County Attys., Conroe, for appellee.

Before MCKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

J.B.L. appeals from an order transferring J.B.L. to the Texas Department of Criminal Justice to serve the remainder of his determinate sentence. *See* Tex. Fam. Code Ann. § 54.11(i)(2) (Vernon Supp. 2009); Tex. Fam.Code Ann. § 56.01(c)(2) (Vernon Supp.2009). J.B.L. challenges both the constitutionality of the determinate sentencing statute and the sufficiency of the evidence supporting the trial court's findings of fact. We affirm the trial court's judgment.

Issues one and two posit that the determinate sentencing statute violates the due process requirement that a jury determine any discrete issue of fact that has the effect of increasing the maximum punishment that can be assessed. *See Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[1] "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* The "statutory maximum" for *Apprendi* purposes "is not the maximum sentence a

---

1. J.B.L. claims violation of both the state and federal constitutions, but he presents a combined analysis of precedent based entirely on the federal constitution. "Consequently, we need not address J.B.L.'s Texas Constitutional claims." *See Muniz v. State,* 851 S.W.2d 238, 251–52 (Tex.Crim.App.1993) (Absent argument and authority supporting the claim that the state constitution provides greater protection than the federal constitution, the court need not address the state constitutional claims).

judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely v. Washington*, 542 U.S. 296, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The relevant inquiry is whether the required finding exposes the defendant to a greater punishment than that authorized by the jury's verdict. *Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348.

■ J.B.L. contends that the Juvenile Justice Code violates the *Apprendi* standard at two points in a determinate sentencing proceeding: (1) when the grand jury approves the petition for determinate sentencing; and (2) when the trial court determines whether to transfer the juvenile to the adult prison system to complete his sentence. J.B.L. argues that both actions increased his punishment without a jury having determined the issue beyond a reasonable doubt.

■ A grand jury certified the petition for determinate sentencing filed by the State. *See* TEX. FAM.CODE ANN. § 53.045 (Vernon 2008). J.B.L. argues that Section 53.045 violates the due process requirements established by *Apprendi* because J.B.L. may lose his liberty and be stigmatized by a conviction as an adult without having a jury determine beyond a reasonable doubt that "this form of penalty should be imposed." The narrow issue resolved by *Apprendi*—whether the sentence imposed was permissible given that it was above the maximum for the offense charged by the indictment count in question—concerned sentencing. *See Apprendi*, 530 U.S. at 474–75, 120 S.Ct. 2348. The grand jury certification functions as an indictment and satisfies the constitutional requirement of an indictment. *In re T.D.H.*, 971 S.W.2d 606, 608–09 (Tex. App.-Dallas 1998, no pet.). The procedure established by Section 53.045 does not violate the due process requirements established by *Apprendi* because the jury determines the maximum punishment allowed under the charging instrument. *See* TEX. FAM.CODE ANN. § 53.045.

The trial court instructed the jury that "the disposition for Aggravated Robbery, is commitment in the Texas Youth Commission with a possible transfer to the institutional division or the pardons and paroles division of the Texas Department of Criminal Justice for a term of not more than forty (40) years." The charge questions asked if the jury did "find beyond a reasonable doubt that [J.B.L.] is in need of rehabilitation or the protection of the public or the child requires that disposition be made?" The jury was given the option of answering "Yes" or "No," and answered "Yes." The jury then found that "[J.B.L.], engaged in delinquent conduct by committing the offense of Aggravated Robbery" and assessed punishment at thirty years. Thus, the jury did determine the maximum punishment for the offense.[2] *See Apprendi*, 530 U.S. at 494, 120 S.Ct. 2348.

■ J.B.L. argues that the transfer procedure in Section 54.11 of the Texas Family Code does not comport with due process because the jury was not given the opportunity to determine whether J.B.L. met the criteria for transfer. *See* TEX. FAM.CODE ANN. § 54.11(k). *Apprendi* prohibits a trial court from an action that has the effect of *increasing* the punishment imposed over that which the jury authorized with its verdict. *Apprendi*, 530 U.S.

---

**2.** J.B.L. does not suggest that the jury could not constitutionally assess a thirty year sentence. *See generally In re Gault*, 387 U.S. 1, 16, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) ("At common law, children under seven were considered incapable of possessing criminal intent. Beyond that age, they were subjected to arrest, trial, and in theory to punishment like adult offenders.").

at 494, 120 S.Ct. 2348. *Apprendi* distinguished state capital sentencing schemes in which a jury verdict finds the defendant guilty of a capital crime and the trial court subsequently determines whether the maximum penalty, rather than a lesser one, should be imposed. *Apprendi,* 530 U.S. at 496–97, 120 S.Ct. 2348. The transfer procedure found in Section 54.11 of the Texas Family Code allows the trial court to decide whether a *lesser* sentence than that assessed by the jury ought to be served. *See* TEX. FAM.CODE ANN. § 54.11(k). After being instructed on a possible transfer to the Texas Department of Criminal Justice, the jury authorized a thirty year sentence for J.B.L. At the transfer hearing, the trial court determined whether J.B.L. should be returned to the Texas Youth Commission or be transferred for the completion of the sentence assessed by the jury. *Id.* J.B.L. was never exposed to a greater punishment than that authorized by the jury's verdict. *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348. We overrule issues one and two.

In issue three, J.B.L. contends the evidence developed in the transfer hearing was factually insufficient to support the findings of fact entered by the court. The findings J.B.L. contends are not supported by sufficient evidence are: (1) a finding that "Juvenile–Respondent did not complete his Minimum Period of Confinement at the Texas Youth Commission[;]" and (2) a finding that "The Texas Youth Commission's full recommendation was for a transfer of the Juvenile–Respondent to TDCJ–ID." [3]

■ J.B.L. argues the first of the two challenged findings is incorrect because the disposition order did not order a minimum period of confinement. The disposition order imposes a determinate sentence of thirty years based upon a jury finding that J.B.L. committed aggravated robbery. The first challenged finding actually relates to Human Resources Code Section 61.081, which prohibits the Texas Youth Commission from releasing under supervision, without approval of the juvenile court, a child who has been committed to the commission under a determinate sentence for conduct constituting a first degree felony. *See* TEX. HUM. RES.CODE ANN. § 61.081(f)(2) (Vernon Supp.2009). In such a case, the commission may not release the child without approval of the juvenile court unless the child has served at least three years of his sentence. *Id.* J.B.L. has not challenged the finding that he served only twenty-two months of his sentence. Thus, J.B.L.'s argument that the finding is erroneous is not supported by the record.

■ The trial court also found that the commission's full recommendation was to transfer J.B.L. to the adult prison system. The commission's court liaison, Leonard Cucolo, testified that the commission recommended "that [J.B.L.] be transferred to the Institutional Division of the Texas Department of Criminal Justice and not be placed on parole." Cucolo also testified that he, Diane Gadow, Leslie Blizzard, and Cherie Townsend all recommended transfer. Cherie Townsend is the Executive Commissioner of the Texas Youth Commission. Diane Gadow is the Deputy Commissioner of Treatment and Support. Leslie Blizzard is a psychologist at Crockett State School. Cucolo's testimony is

---

**3.** The trial court made seventeen findings; J.B.L. has challenged only two on appeal. J.B.L. has not challenged on appeal findings that: (1) "Juvenile–Respondent was adjudicated for the offense of aggravated robbery on

June 13, 2007 and committed to the Texas Youth Commission on a 30 year determinate sentence[;]" and (2) Juvenile–Respondent has served approximately 22 months of his total 30 year sentence."

supported by a document in the commission's file. The document, titled "Movement from High Restriction," approved a referral to juvenile court with a recommendation for transfer to the adult prison system. The document is signed by Cucolo, Gadow and Townsend. The commission's file on J.B.L. also contains a "Psychological Assessment—Update" signed by Blizzard and by Traci Kramer–Dudley, the Director of Clinical Services. The updated assessment states that "a transfer to TDCJ–ID is recommended."

■ Although the evidence in the record shows that the commission did recommend transfer, J.B.L. argues that the trial court's finding is "completely adverse to the testimony of the sole witness from the Texas Youth Commission[.]" J.B.L. claims Cucolo testified that J.B.L. did not meet the criteria for transfer to the adult prison system and argues this testimony is significant because it shows that J.B.L. did not qualify for transfer according to the commission's own standards. The testimony at issue was part of Cucolo's explanation of the process through which the commission both determines whether a child approaching age nineteen qualifies for release on parole or must be referred to the juvenile court and decides what recommendation the commission should make regarding the transfer to the adult system. Cucolo explained that the commission developed objective criteria to determine whether a child would remain in the Texas Youth Commission. If a child does not meet the criteria for transfer to the adult system, the child would remain in the Texas Youth Commission unless he met the criteria for release.

According to Cucolo, the commission adjusted its policy in response to statutory changes enacted in 2007.[4] In particular,

the commission could no longer hold a youthful offender beyond his nineteenth birthday. *See* TEX. HUM. RES.CODE ANN. § 61.084(e) (Vernon Supp.2009). Because a child who would turn nineteen could not remain in the Texas Youth Commission until he turned twenty-one, some youthful offenders could not serve enough of their sentence for the commission to have the statutory authority to release the child to parole without referring the matter to the juvenile court. *See* TEX. HUM. RES.CODE ANN. § 61.081(f). In determining how to proceed, the commission first determines whether the child is eligible for release on parole from the Texas Youth Commission. Because the 2007 statutes apply to J.B.L. and he would turn nineteen before he had served three years of his determinate sentence for aggravated robbery, J.B.L. did not qualify for release to parole from Texas Youth Commission. J.B.L. could not remain in a Texas Youth Commission facility beyond his nineteenth birthday, so the commission formed its recommendation by considering factors that Cucolo testified are very similar to the factors considered by the juvenile court in determining a transfer. *See* TEX. FAM.CODE ANN. § 54.11(k).

In making a determination in a release or transfer hearing, the trial court may consider: (1) "the experiences and character of the person before and after commitment to the youth commission;" (2) "the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed;" (3) "the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family;" (4) "the recommendations of the youth commission and prosecuting at-

---

4. *See* Act of May 25, 2007, 80th Leg., R.S., ch. 263, 2007 Tex. Gen. Laws 421 (effective June 7, 2007). J.B.L. was committed to the commission's care on June 13, 2007.

torney;" (5) "the best interests of the person;" and (6) "any other factor relevant to the issue to be decided." Tex. Fam.Code Ann. § 54.11(k). We review the trial court's decision for abuse of discretion. *In re F.D.*, 245 S.W.3d 110, 113 (Tex.App.-Dallas 2008, no pet.).

Cucolo testified that J.B.L. performed well academically while at Texas Youth Commission. J.B.L. was the valedictorian of his G.E.D. class of twenty-six. Regarding the treatment J.B.L. received in Texas Youth Commission, J.B.L. completed the resocialization program and at the time of the hearing was on the Youth Empowerment Stage ("YES") of the CoNEXTions program. Although he had attained YES, J.B.L. was "inactive," which could mean he was not fully meeting the requirements of that stage.

According to Cucolo, J.B.L. had an extensive delinquent history. J.B.L. was first adjudicated for a criminal offense—interference with a police officer—at age fourteen. The following year, J.B.L. was adjudicated for burglary of a habitation. He was later adjudicated for a second burglary of a habitation. While he was on intensive supervision probation, J.B.L. committed the aggravated robbery for which he received a determinate sentence of thirty years. That offense was part of a crime spree that included three armed robberies.

In addition to J.B.L.'s delinquent history, his other risk factors included a pattern of behavior that existed while J.B.L. was in Texas Youth Commission facility. According to Cucolo, J.B.L. "had problems with authority," that occurred throughout his stay and extended into the period during which the transfer evaluations were being conducted. For instance, J.B.L. would be in undesignated areas without permission, would throw items, would use profanity and speak disrespectfully to the staff, and would refuse to follow instructions. The commission concluded that J.B.L.'s inability to deal with following staff instructions would likely continue in a less restrictive parole setting.

Blizzard conducted two psychological assessments of J.B.L. Blizzard performed the second assessment after she reviewed both the information regarding J.B.L.'s involvement in a carjacking, a home invasion robbery, and a high speed chase, and the information regarding J.B.L.'s recent behavior in the dorm. Although Blizzard's first assessment concluded that J.B.L. would be a candidate for adult parole, in the updated assessment Blizzard recommended that J.B.L. be returned to court for possible transfer to the prison system. The report states

> [J.B.L.] is currently assessed at Stage 4-Yes. However, after reviewing his behavior as indicated on the dorm logs, his overall attitude does not reflect appropriate Stage 4-Yes values. Though his number of serious incident reports has not increased, his disrespectful attitude towards staff along with his refusal to follow simple commands indicate that [J.B.L.] may have not significantly internalized change. He continues to display behaviors which may lead to high-risk situations once paroled.

In addition, Cucolo suggested that J.B.L.'s lack of success on juvenile probation indicated a risk factor for problems on parole. Cucolo also suggested that J.B.L.'s behavior characteristics, which included being easily led by others and a willingness to participate in activities to gain negative acceptance, might cause J.B.L. to associate with other negative peers.

Cucolo's testimony did not, as argued by J.B.L. on appeal, establish that J.B.L. did not meet the standard for transfer to the adult prison system. The trial court could

consider Cucolo's testimony and the commission's file, both of which were admitted without objection, in determining the relevant factors contained in Section 54.11(k). *See* TEX. FAM.CODE ANN. § 54.11(k). The trial court also considered the expert opinion of Kit William Harrison, a forensic psychologist who testified on behalf of J.B.L. Harrison calculated J.B.L.'s risk score to be low, in part because J.B.L. did not have a history of chemical dependency. According to Harrison, J.B.L.'s adolescent criminal spree behavior made J.B.L. less of a risk for re-offending than a person with childhood-onset chronic criminal behavior. J.B.L. has good intellectual functioning and no psychopathology. According to Harrison, J.B.L.'s conduct while in Texas Youth Commission "boils down to . . . disruptive behavior." Harrison diagnosed J.B.L. with adolescent onset conduct disorder, which he claims disappears by early adulthood in one-half of all persons given that diagnosis. Although J.B.L.'s "tendency to mouth off" concerned him, Harrison placed J.B.L.'s dynamic risk of re-offending at low to moderate.

J.B.L.'s mother testified that her family would support J.B.L.'s efforts while he is on parole. J.B.L. testified that he realizes that he frightened the woman whom he robbed at Wal–Mart, and he knows what he did was wrong. Being in Texas Youth Commission taught him the value of family and freedom. He learned to weld while in Texas Youth Commission and believes he can become a certified welder. On cross-examination, J.B.L. admitted he had a tattoo that was an acronym for a phrase connected to the Bloods, but J.B.L. denied any gang involvement and stated that he had seen a lot of people with the same tattoo.

In this case, some evidence supports the trial court's decision to transfer J.B.L. to Texas Department of Criminal Justice to serve the remainder of his sentence. Although J.B.L. exhibited intelligence and some awareness that his criminal conduct had harmed others, the severity of his conduct, combined with his previous lack of success on probation and his continued defiance and disrespectful attitude towards authority, support the trial court's decision to transfer J.B.L. *See In re F.D.*, 245 S.W.3d at 113. We overrule issue three and affirm the judgment of the trial court.

AFFIRMED.