# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00665-CV

### In the Matter of C. Z.

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. J-31770, HONORABLE RHONDA HURLEY, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

In June 2015, C.Z., a juvenile at the time, pleaded true to the allegation that he had committed the offense of aggravated robbery with a deadly weapon. *See* Tex. Penal Code § 29.03(a). The juvenile court accepted his plea and found that the allegation was true. The court assessed a 12-year determinate sentence, and C.Z. was placed in the Travis County Juvenile Probation Department–Local Commitment Program (LCP). *See* Tex. Fam. Code § 54.04011(c)(2)(a). In July 2017, the LCP referred C.Z. to the juvenile court for transfer to the Texas Department of Criminal Justice–Institutional Division (TDCJ). *See* Tex. Hum. Res. Code § 152.0016(j)(1). After holding a hearing, the juvenile court signed an order transferring C.Z. to TDCJ to complete his sentence. *See* Tex. Fam. Code § 54.11(i)(2). C.Z. now appeals, contending in two issues that the juvenile court abused its discretion in ordering him transferred to TDCJ and that he was denied effective assistance of counsel at the adjudication and disposition proceedings. We will affirm the juvenile court's order.

DISCUSSION

**Transfer Order**

In his first appellate issue, C.Z. contends that the juvenile court abused its discretion in transferring him to TDCJ because the juvenile court's findings of fact and conclusions of law "contain several findings completely devoid of evidentiary support," and the court's "ultimate decision on transfer . . . is unreasonable and arbitrary and must be reversed."

If a juvenile court in a county that operates a post-adjudication secure correctional facility finds that a juvenile has engaged in delinquent conduct constituting the felony offense of aggravated robbery, the court may commit the juvenile to a post-adjudication secure correctional facility with a determinate sentence. *See id.* § 54.04011(a), (b), (c)(2)(A) (providing for commitment to post-adjudication secure correctional facility if juvenile commits an offense listed under Tex. Fam. Code § 53.045); *id.* § 53.045(a)(7) (listing aggravated robbery as offense eligible for a determinate sentence). Later, before the juvenile becomes 19 years of age, the operator of the post-adjudication secure correctional facility "may refer the child to the juvenile court that entered the order of commitment for approval of the child's transfer to [TDCJ] for confinement if the child has not completed the sentence and . . . the child's conduct, regardless of whether the child was released under supervision through a program established by the board or department, indicates that the welfare of the community requires the transfer . . . ." Tex. Hum. Res. Code § 152.0016(j)(1). The juvenile court must then hold a hearing. *See* Tex. Fam. Code § 54.11(a). After the hearing, the juvenile court may order that the juvenile be returned to the post-adjudication secure correctional facility or transferred to TDCJ. *See id.* § 54.11(i).

The statute provides a non-exclusive list of factors that the juvenile court may consider when deciding whether to transfer the juvenile to TDCJ:

> In making a determination under this section, the court may consider the experiences and character of the person before and after commitment to the Texas Juvenile Justice Department or post-adjudication secure correctional facility, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the Texas Juvenile Justice Department, county juvenile board, local juvenile probation department, and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

*Id.* § 54.11(k). Consideration of this non-exclusive list of statutory factors is discretionary. *See* Tex. Gov't Code § 311.016(1) ("'May' creates discretionary authority or grants permission or a power."). "The juvenile court is not obliged to consider all of the factors listed, and it may consider relevant factors not listed." *In re N.G.-D.*, No. 03-14-00437-CV, 2016 WL 105948, at *3 (Tex. App.—Austin Jan. 8, 2016, no pet.) (mem. op.); *see In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.); *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied). Moreover, the juvenile court can assign different weights to the factors considered. *See In re N.K.M.*, 387 S.W.3d at 864; *In re J.J.*, 276 S.W.3d at 178.

We review a juvenile court's decision to transfer a juvenile to TDCJ for an abuse of discretion. *See In re M.C.*, 502 S.W.3d 852, 854 (Tex. App.—Texarkana 2016, pet. denied); *In re J.J.*, 276 S.W.3d at 178. "If some evidence exists to support the juvenile court's decision, there is no abuse of discretion." *In re D.J.*, No. 07-16-00013-CV, 2018 WL 828344, at *2 (Tex. App.—Amarillo Feb. 12, 2018, no pet. h.) (mem. op.) (citing *In re D.L.*, 198 S.W.3d 228, 229 (Tex.

App.—San Antonio 2006, pet. denied)). "We do not substitute our decision for that of the juvenile court and we reverse its order only if the juvenile court acted in an unreasonable or arbitrary manner." *Id.* (citing *In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.)).

C.Z. argues that several of the juvenile court's findings are not supported by the record and that "[t]he cumulative effect of the court's reliance on erroneous fact-finding renders the ultimate transfer decision unreasonable and arbitrary." We begin by noting that C.Z. has not challenged the remainder of the juvenile court's findings, including the following:

- Prior to commitment to LCP, [C.Z.] was previously referred to the juvenile court for twenty-one allegations of delinquent conduct. The first referral occurred when [C.Z.] was 11 years of age.

- Prior to commitment to LCP, [C.Z.] was previously adjudicated for the felony offenses of Burglary of a Habitation . . . Evading with a Vehicle . . . and Assault of a Public Servant . . . .

- Prior to commitment to LCP, [C.Z.] was a high risk for future antisocial (if not violent) behavior.

- Prior to commitment to LCP, [C.Z.] was a member of a gang.

- While in LCP, [C.Z.] committed several Level II violations including: (1) Possession of Contraband . . . (2) Engaging in Gang-Related Activity . . . (3) Assault on Juvenile with Injury . . . (4) Gang-Related Activity . . . (5) Fleeing Apprehension . . . (6) Attempted Assault . . . . Additionally, [C.Z.] continued to violate policies of LCP as demonstrated by the Serious Incident Reports admitted into evidence.

- [C.Z.] was provided opportunities but failed to complete vocational training while at LCP . . . .

- While in LCP, [C.Z.] did not fully participate in rehabilitative treatment and failed to complete the requisite four phases of treatment and counseling.

4

- The psychological evaluation . . . supports a finding that [C.Z.] is a future risk to engage in antisocial (if not violent) behavior.

- [C.Z.] continued to be a member of a gang while in LCP.

- The Court considered the abilities of [C.Z.] to contribute to society and found the abilities to be lacking. [C.Z.], on several occasions, refused to participate in vocational training.

- The Court considered the recommendations of LCP and the prosecuting attorney. These recommendations strongly urged the transfer of [C.Z.] to TDCJ.

- The Court considered the best interests of [C.Z.] who had failed to complete the rehabilitative counseling and treatment offered as well as much of the vocational training. [C.Z.] continues to be a risk for future antisocial (if not violent) behavior. A potential release into the community would not benefit [C.Z.] in that [C.Z.] is incapable of handling the mundane pressures of life. [C.Z.] continues to be impulsive, is not well equipped for future employment, and he could potentially add to his criminal history record by committing new crimes.

- The Court considered all other relevant factors raised by State's counsel and [C.Z.'s] counsel.

- The welfare of the community requires that [C.Z.] be transferred to [TDCJ] to complete his determinate sentence . . . .

These unchallenged findings show that the juvenile court carefully considered many of the discretionary factors found in Texas Family Code section 54.11(k) and that its decision to transfer C.Z. to TDCJ was not unreasonable or arbitrary.

Moreover, C.Z.'s challenges to the court's findings are unavailing. C.Z. first argues that the record does not support the juvenile court's findings "related to the seriousness of the offense." As discussed above, C.Z. pleaded true to the allegation that he committed aggravated robbery with a deadly weapon. The evidence presented at the transfer hearing showed that the

robbery took place at a convenience store. The complainant left his car running when he entered the store to deliver newspapers. C.Z. got into the car and started to drive away. The complainant reached into the car through the window while trying to stop C.Z. from stealing the car. The complainant's arm got stuck in the car, and C.Z. drove away. C.Z. told the complainant, "I'm going to kill you." After being dragged some distance, the complainant fell away from the car, sustaining minor injuries.

The juvenile court found that C.Z. "committed a serious felony offense that could have ended the life of the victim" and that "the nature of the offense" was "callous and cruel." C.Z. argues that the record does not support this finding because the complainant was not a credible witness. C.Z. points out that the complainant revised certain details of his testimony at the transfer hearing after C.Z.'s counsel played a video of the incident. However, these details were not material, and the record indicates that the video itself corroborated the complainant's basic account that C.Z. stole his car. In addition, the juvenile court was the sole judge of the credibility of the witnesses, and we give great deference to the juvenile court's findings of historical fact. *See In re C.R.M.*, No. 03-14-00814-CV, 2016 WL 4272115, at *1 (Tex. App.—Austin Aug. 10, 2016, no pet.) (mem. op.); *In re J.D.*, No. 10-13-00112-CV, 2013 WL 5494709, at *4 (Tex. App.—Waco Sept. 26, 2013, pet. denied) (mem. op.); *In re L.C.*, No. 04-12-00326-CV, 2013 WL 1338358, at *3 (Tex. App.—San Antonio Apr. 3, 2013, no pet.) (mem. op.); *In re R.A.*, No. 03-11-00054-CV, 2012 WL 2989224, at *3 (Tex. App.—Austin July 20, 2012, no pet.).

C.Z. further argues that the record does not support the juvenile court's findings concerning the seriousness of the offense because C.Z. could not have been adjudicated for the offense of aggravated robbery with a deadly weapon when the item that he was stealing was the same

6

item that he allegedly used as a deadly weapon—namely, the complainant's car. According to C.Z., he had to possess the car before he could use it as a deadly weapon, and, if he possessed it, he was not still in the process of stealing it. We disagree.

A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code § 29.02(a). A person commits aggravated robbery "if he commits robbery as defined in Section 29.02, and he . . . uses or exhibits a deadly weapon . . . ." *Id.* § 29.03(a)(2). When C.Z. drove away with the complainant's arm stuck in the car's window, C.Z. was still in the process of "maintain[ing] control of the property," and, therefore, still in the process of committing robbery. *See id.* § 29.02(a). And, while thus engaged in robbery, he used the car as a deadly weapon by dragging the complainant along a street, where he could have been seriously injured or killed by the vehicle that C.Z. was stealing or by other vehicles driving on the street. The fact that the same vehicle was alleged as both the item being stolen and as the deadly weapon is immaterial. Therefore, the record supports the juvenile court's findings related to the seriousness of the offense.

C.Z. also argues that the juvenile court "failed to consider the totality of C.Z.'s time in the LCP." C.Z. points to evidence presented at the transfer hearing allegedly showing that he was making "significant progress" in the LCP. This evidence, according to C.Z., showed that the number of incidents in which C.Z. was involved decreased each year, that he voluntarily participated in rehabilitative activities, and that the incidents he was involved in were not as serious as those found in other cases in which juvenile courts have ordered persons transferred to TDCJ. Despite the

7

evidence to which C.Z. refers, however, the State presented evidence that C.Z. was involved in multiple serious incidents while in the LCP and that he rejected several offers of rehabilitative and vocational services. C.Z. has not challenged the juvenile court's specific findings concerning these incidents. Therefore, the evidence that C.Z. relies on does not negate the evidence supporting the juvenile court's findings that C.Z. is a threat to the community and that release into the community would not benefit C.Z., nor does the evidence render arbitrary the court's decision to transfer C.Z. to TDCJ.

Finally, C.Z. argues that the juvenile court "erred in making the finding that 'protection of the victim and the victim's family' required transfer." However, the court did not find that this factor weighed in favor of transfer to TDCJ. Instead, the court merely found, "The protection of the victim would not be advanced by returning [C.Z.] to LCP for release on parole." Moreover, even assuming, without deciding, that the record does not support this finding, the juvenile court was not required to consider every factor, or to give every factor equal weight. *See In re N.K.M.*, 387 S.W.3d at 864; *In re J.J.*, 276 S.W.3d at 178.

In light of the juvenile court's findings, which we have determined to be supported by the record, we cannot conclude that the juvenile court abused its discretion in transferring C.Z. to TDCJ. Accordingly, we overrule C.Z.'s first appellate issue.

**Ineffective Assistance of Counsel**

In his second appellate issue, C.Z. contends that "he was denied effective assistance of counsel at the adjudication and disposition stages of proceedings, in violation of the Sixth Amendment and [Texas Family Code section] 54.03(b)(5), where counsel allowed him to plead

guilty to and agree to a twelve year determinate sentence disposition on a legally deficient charging document." *See* Tex. Fam. Code § 54.03(b)(5) ("At the beginning of the adjudication hearing, the juvenile court judge shall explain to the child and his parent, guardian, or guardian ad litem . . . the child's right to representation by an attorney if he is not already represented . . . ."). In this issue, C.Z. again urges the argument discussed above that he could not have been adjudicated for aggravated robbery with a deadly weapon when the State alleged that the same vehicle was both the item stolen and the deadly weapon. C.Z. further argues that his counsel was ineffective in not pursuing a ruling on his special exceptions and in allowing C.Z. to plead true to the allegation. Finally, C.Z. argues that the record demonstrates that "he did not understand the consequences of his plea agreement." To prevail on his ineffective-assistance-of-counsel claim, C.Z. must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

For the reasons discussed above, we conclude that the State's original petition alleging delinquent conduct was not legally deficient in alleging that the complainant's vehicle was both the item stolen and the deadly weapon. Further, we do not agree that the record shows that C.Z. did not understand the consequences of his plea. C.Z. refers to the testimony of a juvenile probation officer, who testified that C.Z. told her that "he thought the plea agreement was actually for a two year period of time, and then once he got to LCP it was three." Despite this testimony, the record indicates, and the juvenile court could have concluded, that C.Z. was properly warned of the

9

consequences of his plea; both the juvenile court at the plea hearing and the written plea agreement that C.Z. and his attorney signed indicated that C.Z. could be held in the LCP until his nineteenth birthday. Therefore, we cannot conclude that C.Z. received ineffective assistance of counsel.[1]

Because the record before us does not demonstrate that C.Z. received ineffective assistance of counsel, we overrule his second appellate issue.

**CONCLUSION**

Having overruled C.Z.'s appellate issues, we affirm the juvenile court's order transferring C.Z. to TDCJ.

---

[1] In addition, we note that the State asserts that C.Z. cannot raise these complaints at this stage of the proceedings, given that he waived his right to appeal the adjudication order when he pleaded true to the allegation. As the State points out, the Family Code provides:

> A child who enters a plea or agrees to a stipulation of evidence in a proceeding held under this title may not appeal an order of the juvenile court entered under Section 54.03, 54.04, or 54.05 if the court makes a disposition in accordance with the agreement between the state and the child regarding the disposition of the case, unless:
>
> (1) the court gives the child permission to appeal; or
>
> (2) the appeal is based on a matter raised by written motion filed before the proceeding in which the child entered the plea or agreed to the stipulation of evidence.

Tex. Fam. Code § 56.01(n). Moreover, the reporter's record of the plea hearing indicates that the juvenile court warned C.Z., " If I do follow the agreement, then you give up your right to appeal this case, which is basically a right to ask a different judge to make a different decision," and that C.Z. agreed that he understood that warning.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: May 16, 2018