# NO. 12-20-00162-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|                         |   |                          |
|-------------------------|---|--------------------------|
| *IN THE MATTER OF*      | § | *APPEAL FROM THE 123RD*  |
|                         | § | *JUDICIAL DISTRICT COURT*|
| *J.T.D., A JUVENILE*    | § | *SHELBY COUNTY, TEXAS*   |

## *MEMORANDUM OPINION*

J.T.D. appeals from an order transferring him to the Texas Department of Criminal Justice Institutional Division (TDCJ-ID). We will affirm the trial court's order.

## BACKGROUND

J.T.D. was accused of multiple sexual offenses against a four year old child: Aggravated Sexual Assault of a Child, Attempted Aggravated Sexual Assault of a Child, Indecency with a Child (with sexual contact), and Indecency with a Child. On July 12, 2018, the trial court found that J.T.D. committed the acts of which he was accused, adjudicated him delinquent, and sentenced him to confinement in the Texas Juvenile Justice Department (TJJD) for a determinate period of eighteen years. J.T.D. was sixteen years old when he was adjudicated delinquent.

However, TJJD may not retain custody of a youthful offender beyond his nineteenth birthday.[1] Accordingly, TJJD recommended "that [J.T.D.] be granted a release to the supervision of TDCJ-ID [Parole Division] prior to the completion of his three-year minimum period of confinement to serve the remainder of his 18-year determinate sentence." J.T.D. had served approximately twenty two months, plus approximately four months of predetention credit,

---

[1] *See* TEX. HUM. RES. CODE ANN. § 245.151(d), (e) (West 2013). If the juvenile is serving a determinate sentence, a determination must be made before his nineteenth birthday to either release him under supervision or transfer him to TDCJ-ID to complete his sentence. *Id*. § 245.151(e), (West 2013).

and therefore lacked ten months of completing his minimum period of confinement.[2] Consequently, the juvenile court that adjudicated him delinquent was required to conduct a hearing to determine whether J.T.D. should be released under supervision, as TJJD recommended, or ordered transferred to TDCJ-ID to serve the remainder of his eighteen year determinate sentence.[3]

At the release or transfer hearing, the court received into evidence the records from J.T.D.'s confinement with TJJD. In addition, the court heard the testimony of Alanna Bennett, court liaison for TJJD, Katherine Brown, the lease manager supervisor at the Gainesville State School with TJJD, the mother of the victim, and J.T.D. After the hearing, the trial court ordered that J.T.D. be transferred to the TDCJ-ID to serve the remainder of his determinate sentence. This appeal followed.


## TRANSFER TO TDCJ-ID

In his sole issue, J.T.D. contends that the trial court abused its discretion by transferring him to TDCJ-ID.

### Standard of Review

When a juvenile has been adjudicated and committed to TJJD and is subsequently ordered transferred to TDCJ-ID, we review the trial court's order for abuse of discretion. ***In the Matter of M.C.***, 502 S.W.3d 852, 854 (Tex. App.—Texarkana 2016, pet. denied); ***In re J.B.L.***, 318 S.W.3d 544, 550 (Tex. App.—Beaumont 2010, pet. denied). In determining whether the trial court abused its discretion, the reviewing court should examine the entire record to determine if the trial court acted arbitrarily, unreasonably, or without reference to any guiding principles or rules. ***In the Matter of M.C.,*** 502 S.W.3d at 854. The trial court's decision will be upheld if the record contains some evidence to support it. *Id*.

### Applicable Law

In determining whether to release or transfer a juvenile, the trial court may consider the following:

---

[2] If the juvenile has been committed to TJJD for conduct constituting a first degree felony, TJJD is prohibited from releasing him under supervision without approval of the juvenile court that entered the order of commitment unless the juvenile has served at least three years of his determinate sentence. *Id*. § 245.051(c)(2).

[3] *See id*. § 244.014 (West Supp. 2020); *see also* TEX. FAM. CODE ANN. § 54.11(i)(j) (West Supp. 2020).

1. The experiences and character of the person before and after commitment to TJJD;
2. The nature of the penal offense that the person was found to have committed and the manner in which the offense was committed;
3. The abilities of the person to contribute to society;
4. The protection of the victim of the offense or any member of the victim's family;
5. The recommendations of TJJD and prosecuting attorney;
6. The best interest of the person;
7. Any other factor relevant to the issue to be decided.

TEX. FAM. CODE ANN. § 54.11(k) (West Supp. 2020). There is no requirement that the trial court consider all the listed factors, or that evidence be admitted on each factor. *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied).

**Discussion**

Alanna Bennett testified about J.T.D.'s record during his twenty two months spent with TJJD. She outlined twelve disciplinary rule violations including making noise, using foul language, sharing soap, getting a tattoo, improper phone use, and getting into a fight, all finally characterized as minor. The fight was initially considered a major violation. However, the other juvenile was shown to be the aggressor and the Level 11 Panel that reviewed alleged serious rule violations found no serious violation. TJJD rules prohibit receiving a tattoo because of the fear of infection. In violation of the rule, J.T.D. had his sister's name tattooed on his ankle. J.T.D. also allowed another juvenile the use of his "C-Tel" information so that the other juvenile could contact an underage girl that J.T.D. knew.

J.T.D. excelled academically. He gained his high school diploma, becoming the first person in his biological family to do so. He became certified in spot welding, and completed OSHA certification. J.T.D. completed the General Rehabilitation Program gaining Youth Empowerment Status, the highest level possible. He satisfactorily completed the Sexual Behavior Treatment Program. Although not required, he attended and completed Aggression Replacement Training. He was characterized as accepting full responsibility for his actions, he appeared remorseful, and seemed to feel empathy for the victim. In two evaluations, J.T.D. was determined to have a low to moderate risk of re-offending.

In one place in the records, he is described as showing "social isolation and poor peer relationships." But later he is characterized as well liked by the students and a mentor to new students. He also played on the school football team.

3

J.T.D. was an adopted child. His adoptive parents were undergoing a divorce when he committed the crimes that resulted in his adjudication of delinquency. He enjoyed a positive relationship with his father. But his father disowned him upon the discovery of the nature of J.T.D.'s criminal conduct. His father's whereabouts are presently unknown. His relationship with his mother was always contentious. She has shown little interest in him, and, although notified, did not attend the hearing. His biological parents apparently do not live in the United States. It is clear that J.T.D. lacks any parental support system.

J.T.D. testified that, if released, he would live with Kingdom Outreach, a halfway house for grown men in Dallas. Under the strict guidelines that would apply if released, he thought his time would be filled with work and traveling to and from work. He envisioned someday having his own welding company. In regard to his crimes, he testified, "I regret it every day that I've been in here . . . I regret that I did my crime, or did this to the victim … I hurt the victim emotionally, mentally and physically, and I regret it every day."

J.T.D.'s history during his twenty two months with TJJD reveal an individual who excelled and did far more to effect his rehabilitation than was required. He was well liked and a mentor to others. Despite abandonment by his family, J.T.D. maintains that he "did what he was supposed to do and tried to make the best of a bad situation." He clearly has the ability and desire to contribute to society. It is difficult to believe that J.T.D. will benefit from transfer to the penitentiary.

The abhorrent nature of the crimes he committed is the factor that argues most strongly against his release. The victim still suffers physically and emotionally because of J.T.D.'s criminal conduct. Although J.T.D. has done well in a structured environment, he lacks a parental or family support system. There is no other comparable support system waiting if he is released. His criminal conduct, J.T.D. believed, was at least partially attributable to his family situation and loneliness. J.T.D. said that the fight in which he was involved was also triggered by family issues. The State argues that the same triggering events still exist and that J.T.D. remains a danger to society.

J.T.D.'s disciplinary record was considered good. But it certainly was not unblemished. The most troubling aspect of that record was J.T.D.'s accumulation of rule violations toward the close of his commitment.

We have considered J.T.D.'s record together with the relevant considerations in the Juvenile Justice Code. *See* TEX. FAM. CODE ANN. § 54.11(k). We conclude the trial court did not abuse its discretion in ordering J.T.D.'s transfer to TDCJ-ID. J.T.D.'s issue is overruled.

## DISPOSITION

Because we overrule J.T.D.'s sole issue, the judgment of the trial court is ***affirmed***.

**BILL BASS**
Justice

Opinion delivered May 12, 2021.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 12, 2021**

**NO. 12-20-00162-CV**

**IN THE MATTER OF J.T.D., A JUVENILE**

Appeal from the 123rd District Court
of Shelby County, Texas (Tr.Ct.No. 18NJ645)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired, J., Twelfth Court of Appeals, sitting by assignment.*