

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00022-CV

_____

IN THE MATTER OF M.C., A JUVENILE

On Appeal from the 74th District Court
McLennan County, Texas
Trial Court No. 2015-43-J

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

## O P I N I O N

M.C. initially was placed under the court-ordered supervision of McClennan County[1] juvenile authorities in 2012 for participation in a riot.[2] In August 2015, M.C. entered a "true" plea to the allegation that he had been guilty of the aggravated sexual assault of a child in late November 2013 when he was sixteen years old. As the result of that plea, M.C. was adjudicated by the trial court for the aggravated sexual assault charge and committed to the Texas Juvenile Justice Department (TJJD) for a determinate sentence of ten years. On March 1, 2016, the trial court transferred M.C.'s case to the Texas Department of Criminal Justice Correctional Institutions Division (TDCJ-CID). It is the order of transfer to the TDCJ-CID which is the subject of this appeal.

M.C. argues that the trial court's findings are not sufficient for this Court to adequately review the trial court's transfer order; he would have us remand this matter to the trial court for further findings and conclusions. We find the record adequate to support the trial court's transfer order and overrule M.C.'s point of error.

## I.      Standard of Review

Where a juvenile has been adjudicated and committed to TJJD and subsequently is transferred to TDCJ-CID, we review the trial court's order for an abuse of discretion. *In re T.D.H.*, 971 S.W.2d 606, 610 (Tex. App.—Dallas 1998, no pet.). "In determining whether the trial court

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. PENAL CODE ANN. § 42.02 (West 2011).

abused its discretion, we review the entire record to determine if the trial court acted arbitrarily, unreasonably, or without reference to any guiding principles or rules." *In re A.C.*, 10-14-00364-CV, 2015 WL 6437696, at \*1 (Tex. App.—Waco Oct. 22, 2015, no pet.) (mem. op.). "The trial court's decision will be upheld if the record contains some evidence to support it." *In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.).

## II.     Evidence Presented

At the hearing on the State's motion to transfer, the State presented two witnesses, Eric Powell (M.C.'s supervising probation officer when M.C. was on probation for the riot offense) and Leonard Cucolo (court liaison for the TJJD).

The evidence established that M.C. was put on juvenile court supervision for the riot offense, which was characterized as gang-related because M.C.'s school had listed M.C. as a member of "My Brother's Keepers," which was classified as a gang in Waco. While on probation, Powell said M.C. had exhibited some behavioral problems, but "he did pretty decent. But there was room for a lot of improvement." According to Cucolo, M.C. violated his probationary terms by "not paying his probation fees . . . [and] not participating in the probation programs . . . ." Powell had no concerns about M.C. being a substance or drug abuser. Although Powell said M.C. had violated his supervisory rules, he did not specify the violative conduct upon which he based that conclusion, adding that where M.C.'s violations included his failure to report, those violations usually involved problems with transportation. Powell added that M.C.'s family could have been more supportive in M.C.'s efforts.

Cucolo further testified that M.C. had been committed to TJJD for about five months and had not been able to complete two treatment programs required of him, those being an "aggression replacement training program and the residential sexual behavior treatment program," which usually took twelve to eighteen months to complete. M.C. had done well while committed to TJJD, working toward academic advancement, abstaining from misconduct, and never having been placed in the security unit. Even so, the Department did not find that M.C. had either adequately grasped the nature of his offense, taken responsibility for his offense, or developed strategies to alter his behavior to allow him to "avoid or break the offense cycle." Cucolo indicated that it was the belief at TJJD that M.C. would present "a significant risk to the community if he was to be released to adult parole."

Additionally, Cucolo described the requirement in the Texas Human Resources Code that a juvenile in M.C.'s situation (serving a determinate sentence for a first degree felony) must serve at least three years of the meted sentence in TJJD. *See* TEX. HUM. RES. CODE ANN. § 245.051(c)(2) (West 2013). M.C. had been committed to TJJD August 13, 2015, and the trial court's hearing was held February 29, 2016, about a week before M.C. would turn nineteen. Once a juvenile attains the age of nineteen, the TJJD loses control over that juvenile. TEX. HUM. RES. CODE ANN. § 245.151(e) (West 2013). Because of the determinate sentence, the trial court could either release M.C. to parole under TDCJ-CID's supervision or transfer him to TDCJ-CID for continued confinement.

M.C. presented testimony from two witnesses, Destany Carter (a sexual-offense caseworker at the unit in which M.C. was committed) and Linda Bujan (a program director for TJJD and a licensed sexual-offender treatment provider).

Carter testified that M.C. only had minor rules infractions at the unit, infractions which she characterized as "horseplaying," and that he had only minimal violations during his stay. While M.C. had progressed rapidly through the first three of the five stages in the sexual-offense rehabilitation program, she did not believe he could yet qualify for the fourth stage because his description of the sexual assault continued to differ from that of the victim.[3] Specifically, M.C. denied forcefully removing the victim's clothing, a detail which Carter said was described in the police report. Carter said she did not believe M.C. ever changed his rendition of the sexual assault; this contrasted with Cucolo's testimony that M.C. said he had engaged in sex with the victim alone, then other times he said that other people were present. Carter also testified she believed M.C. could be successful if released on parole and had successfully completed an anger management program.

Bujan testified that M.C. had submitted to a polygraph examination and exhibited no deception during that examination. Although no specifics were discussed about the questions posed during the polygraph examination, it appears from Bujan's testimony that M.C. maintained his view that others were not involved in the assault and that force was not used against the victim.

---

[3]According to a summary of the offense report in TJJD's report to the trial court, the victim said M.C. took her to a shed or garage where they were met by two other young men, who took turns restraining her while each penetrated her—the other two young men penetrating her vaginally, M.C., anally.

(We infer this because Bujan testified that "pass[ing] the polygraph, basically, corroborat[ed] what he'[d] been saying.").

**II.    No Abuse of Discretion**

The record and the trial court's findings and conclusions were sufficient to allow us to conduct our review and reach the conclusion that the trial court did not abuse its discretion in rendering its judgment. In addition to the evidence summarized above, there was testimony that M.C. never expressed empathy for his victim (whom he believed to have been sixteen at the time of the incident), and he expressed the opinion that "this was okay if she was 12 or 13, because that's the way the girls that he knows behave." Cucolo testified that the psychologist who examined M.C. prior to the transfer hearing recommended M.C. be transferred to TDCJ-CID, notwithstanding the progress he had made during his TJJD confinement and lack of negative behavioral incidents.

In its order transferring M.C. to TDCJ-CID, the trial court detailed its considerations in reaching the court's decision. Among the court's findings:

7.    At the hearing, the Court considered written reports from the Texas Juvenile Justice Department (formerly Texas Youth Commission), probation officers, and professional court employees, in addition to the testimony of witnesses.

8.    The Court considered the experience and character of this Respondent, both before and after his commitment to the Texas Juvenile Justice Department, and the evidence presented is clear that the Respondent is of sufficient intellectual abilities and sophistication to be committed at the Institutional Division of Texas Department of Criminal Justice.

9.    The Court considered the nature of the penal offense.

10.    The Court considered the manner in which the offense was committed.

6

11. The Court considered the ability of Respondent to contribute to society.

12. The Court considered the protection of the victim and/or any member of the victim's family.

13. The court considered the recommendations of the Texas Juvenile Justice Department (formerly the Texas Youth Commission) and the prosecuting attorney.

14. The Court is of the opinion that it is in the best interest of this Respondent, and of society that Respondent be placed in the custody of the Texas Department of Criminal Justice - Institutional Division for the remainder of his TEN (10) year sentence.

The record supports each of these findings. These findings and considerations mirror those suggested in the Texas Family Code's statute pertaining to the release of a juvenile from TJJD commitment, or transferring the juvenile (under applicable circumstances as those present here) to TDCJ-CID:

> In making a determination under this section, the court may consider the experiences and character of the person before and after commitment to the Texas Juvenile Justice Department or post-adjudication secure correctional facility, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the Texas Juvenile Justice Department, county juvenile board, local juvenile probation department, and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

TEX. FAM. CODE ANN. § 54.11(k) (West Supp. 2016). Comparing the trial court's findings with the statute's suggested considerations, we find the trial court clearly made its decision with reference to guiding rules or principles as contained in the Texas Family Code. Thus, the trial court did not abuse its discretion in making this ruling.

7

## IV.     Does the Record Allow Sufficient Review?

M.C.'s appellate complaint is not that the trial court abused its discretion in its ruling; but rather the court's findings are insufficient for this Court to adequately review the trial court's order. While claiming not to "question the applicability of the abuse of discretion standard" to the situation at bar, M.C. offers no binding authority for the applicability of any other standard of review. Instead, he argues, "True discretionary questions are nearly unreviewable because no standard exists by which to measure it for reasonableness." M.C. would, instead, have us review the trial court's decision for an "abuse of 'guided' discretion": "A trial court's discretion can be 'guided' by the creation of statutes or such other structures designed to channel the trial court's decision. Thus, a trial court's sentencing decision is discretionary, but it is also governed by legal standards that closely inform or guide discretion."[4] M.C. argues that Texas' abuse of discretion standard, whether the trial court acted without reference to any guiding rules or principles, is insufficient for his proposed "guided abuse of discretion" review. Leaving aside the fact that he provides no Texas authority for his proposed review standard, the record here provides ample evidence of the trial court's reference to guiding rules or principles, namely, the suggested considerations of Section 54.11(k) quoted above. The court references the statute's proposed criteria, and the court's findings are supported by the record we have summarized.

M.C. also argues that the use of the abuse of discretion standard violates his due process rights. He states, "[T]he standard of review as interpreted by this State's courts governing the

---

[4]For this argument, M.C. cites Martha S. Davis, *Standards of Review:   Judicial Review of Discretionary Decisionmaking*, 2 J. APP. PRAC. & PROCESS 47, 54 (2000).

transfer decision effectively results in the appellate courts being nothing more than a judicial speed bump." In this argument, he directs us to language from a federal Ninth Circuit case which stands for the proposition that where a "district court does not explain its reasoning," the appellate court is precluded from properly reviewing the lower court's ruling. *See Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 725 (9th Cir. 2007). There, the trial court gave no reason for granting stays to the parties. That, however, is not the situation here; as we have noted, the trial court in this case listed factors which it took into consideration, and those factors mirror those suggested by the Texas Family Code. We disagree with M.C.'s argument that we are unable to review the trial court's decision to transfer M.C. to confinement in TDCJ-CID. The record is sufficient and supports the trial court's findings. Accordingly, the trial court did not abuse its discretion. M.C. has not shown a due process violation.

We find no basis to engage in the altered review suggested by M.C., and it is not necessary to remand this case to the trial court for further findings. We overrule M.C.'s point of error. We affirm the trial court's order.

Bailey C. Moseley
Justice

Date Submitted:    September 9, 2016
Date Decided:    September 27, 2016

9