

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00057-CV

_____

IN THE MATTER OF C.C., A JUVENILE

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 5078-J

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

In 2020, the State filed a petition alleging that C.C. engaged in delinquent conduct. In 2022, when he was eighteen, C.C. pled true to the allegations in the State's petition and stipulated that he had engaged in delinquent conduct by committing three counts of aggravated sexual assault of a child and one count of unlawful restraint. *See* TEX. PENAL CODE ANN. §§ 20.02, 22.021. A grand jury approved the State's request to seek a determinate sentence,[1] and following a jury trial on punishment, the trial court committed C.C. to the Texas Juvenile Justice Department (TJJD) for a period of twenty-one years for each count of aggravated sexual assault and eight months for unlawful restraint.

On appeal, C.C. argues that the trial court erred by failing to conduct a hearing on his motion for new trial and by submitting a jury charge containing an incorrect parole law instruction. We find that C.C. failed to preserve his first point of error because his motion for new trial was not properly presented to the trial court. While we agree with C.C.'s argument claiming jury-charge error, we find that he was not egregiously harmed by such error. As a result, we affirm the trial court's judgment.

## I.     C.C. Failed to Preserve His First Point of Error

C.C. filed a timely motion for new trial claiming ineffective assistance of counsel and disproportionate sentencing. Because the motion for new trial raised matters not determinable from the record, C.C. requested a hearing on the motion; however, it was overruled by operation of law. C.C. argues that the trial court erred by failing to conduct a hearing on his motion for

---

[1]*See* TEX. FAM. CODE ANN. § 53.045.

new trial. The State argues that C.C. failed to preserve this complaint because his motion for new trial was not properly presented to the trial court. We agree.

Juvenile proceedings are quasi-criminal in nature. *See In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999); *In re D.B.*, 457 S.W.3d 536, 538 n.2 (Tex. App.—Texarkana 2015, no pet.). For this reason, certain aspects of juvenile proceedings are governed by the same rules that apply in criminal cases. "A motion for new trial seeking to vacate an adjudication is . . . governed by Rule 21, Texas Rule of Appellate Procedure." TEX. FAM. CODE ANN. § 56.01(b-1)(2). Under Rule 21, titled "New Trials in Criminal Cases," the motion for new trial must be presented "to the trial court within 10 days of filing it." TEX. R. APP. P. 21.6. As a result, "[t]he Texas Court of Criminal Appeals 'consistently has held the filing of a motion for new trial alone is not sufficient to show "presentment"' and does not preserve an issue for appellate review in the absence of a showing that the trial court has seen the motion." *Navarro v. State*, 588 S.W.3d 689, 691 (Tex. App.—Texarkana 2019, no pet.) (quoting *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App. 1998); *see Colone v. State*, 573 S.W.3d 249, 259 (Tex. Crim. App. 2019) ("[T]he mere filing of a 'certificate of presentment' will not suffice to establish that a motion for new trial and request for a hearing has been presented to the trial court."). Consequently, complaints raised in a motion for new trial in juvenile cases are not preserved unless properly presented. *See In re C.A.G.*, 410 S.W.3d 923, 924 (Tex. App.—El Paso 2013, no pet.).

"The purpose of the presentment rule is 'to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it.'" *Navarro*, 588 S.W.3d at 691 (quoting *Stokes v. State*, 277 S.W.3d 20, 21

3

(Tex. Crim. App. 2009) (quoting *Carranza*, 960 S.W.2d at 78)); *see Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005) ("We have held that to present a motion in the context of a motion for new trial, the defendant must give the trial court *actual notice* that he timely filed a motion for new trial and requests a hearing on the motion for new trial.").

From our review of the appellate record, we find nothing demonstrating that C.C.'s motion for new trial was presented to the trial court. The motion was delivered "to the Office of the County Court at Law," there is no notation on the motion indicating that the trial court saw it, and there is no docket entry showing that the motion, which was overruled by operation of law, was brought to the trial court's attention. *See Navarro*, 588 S.W.3d at 691 (finding disproportionate sentencing claim was not preserved by an unpresented motion for new trial); *Hernandez v. State*, 84 S.W.3d 26, 33 (Tex. App.—Texarkana 2002, pet. ref'd). As a result, we find C.C.'s first point of error unpreserved and overrule it.

## II.     C.C. Was Not Egregiously Harmed by Jury-Charge Error

In his second point, C.C. complains of jury-charge error. "We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)). "[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). The purpose of a jury

4

charge is to instruct the jury on the applicable law, and a charge must include an accurate statement of the law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14.

### A.     The Jury-Charge Error

In 2019, the Texas Legislature amended Article 37.07, Section 4, subsections (a) through (c), of the Texas Code of Criminal Procedure. Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 1, 2019 Tex. Gen. Laws 446, 446–48 (codified at TEX. CODE CRIM. PROC. art. 37.07, § 4(a)–(c) (Supp.)). Those amendments apply to any defendant sentenced on or after September 1, 2019. *See* Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 3, 2019 Tex. Gen. Laws 446, 448. C.C. argues that the trial court erred by using an outdated version of the good conduct time and parole instructions found in Section 4(a) of Article 37.07.

> The current version of Section 4(a) of Article 37.07 reads, in relevant part,
>
> "The length of time for which a defendant is imprisoned may be reduced by the award of parole.
>
> "Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
>
> "It cannot accurately be predicted how the parole law might be applied to this defendant if sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities.
>
> "You may consider the existence of the parole law. You are not to consider the manner in which the parole law may be applied to this particular defendant."

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Supp.). There is no reference to good conduct time in the current version of Section 4(a). *See id.* Yet, the trial court included references to

5

good conduct time in the following portion of the jury charge, which we italicize to highlight any meaningful deviation from the statutory language:

> Under the law applicable in this case, *the juvenile, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time.  Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation.  If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.*
>
> *It is also possible that* the length of time for which the Juvenile *will be* imprisoned *might be* reduced by the award of parole.
>
> It cannot accurately be predicted how the parole law *and good conduct time* might be applied to this Juvenile if he is sentenced to a term of imprisonment, because the application of *these laws* will depend on decisions made by *prison and* parole authorities.
>
> You may consider the existence of the parole law *and good conduct time.  However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Juvenile.*  You are not to consider the manner in which the parole law may be applied to this particular Juvenile.
>
> *Under a determinate sentence, whether you recommend commitment to a criminal justice facility or community supervision, a separate hearing shall be held by the judge before the juvenile's nineteenth birthday, to decide whether to transfer the juvenile into the custody of an adult criminal court.  For community supervision, if the request for transfer is granted, the county's adult probation department would supervise the juvenile for the remainder of his or her probation.  For commitment to the Texas Department of Juvenile Justice, if the request for transfer is granted, the judge will then decide whether the youth should be transferred to adult prison to complete his or her sentence or whether the youth can be safely released on parole without putting the public safety at risk.*

(Emphasis added).

The State concedes that the trial court erred by including outdated language on good conduct time.  Because it deviated from the statutory language, the jury charge was erroneous.

6

## B.     C.C. Was Not Egregiously Harmed

Although the State concedes jury-charge error, it argues that C.C. was not egregiously harmed by the error.  We agree.

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Murrieta*, 578 S.W.3d at 555 (citing *Abdnor*, 871 S.W.2d at 732).  Here, "because [C.C.] did not object to the charge, we will not reverse" the judgment "unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)), such that he did not receive a fair and impartial trial." *Id.* (citing *Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.)).

"Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)).  "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171)).  "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

In reviewing the entire jury charge, we note that the third and fourth paragraphs of the charge stated above instructed the jury that it was not possible to predict how parole law and

good conduct time might be applied to C.C. and that they were not to consider the extent to which it might be awarded or forfeited. "We presume the jury followed the instructions given in the charge." *Murrieta*, 578 S.W.3d at 556 (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002)). "A curative instruction, in combination with other factors, may cure any error." *Id.* (citing *Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006)); *see Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011) (observing that it is presumed jury followed court's instructions).

Even so, C.C. argues that the jury charge demonstrated egregious harm because "[a]n accurately instructed jury would know that, whatever sentence it imposed, C.C. would be required to serve half of that sentence before he would even be eligible for parole." C.C.'s argument does not apply to juvenile cases, and we find that the last paragraph of the trial court's charge correctly informed the jury of C.C.'s parole eligibility. "Once a juvenile attains the age of nineteen, the TJJD loses control over that juvenile." *In re D.O.R.*, No. 06-20-00036-CV, 2021 WL 115772, at *1 (Tex. App.—Texarkana Jan. 13, 2021, no pet.) (mem. op.) (quoting *In re M.C.*, 502 S.W.3d 852, 855 (Tex. App.—Texarkana 2016, pet. denied) (citing TEX. HUM. RES. CODE ANN. § 245.151(e))). Yet, under the Texas Human Resources Code, "the department may not release the child under supervision without approval of the juvenile court that entered the order of commitment unless the child has served at least" three years of his sentence in the TJJD. TEX. HUM. RES. CODE ANN. § 245.051(c)(2). Here, C.C. would not complete the required three-year period of confinement by his nineteenth birthday. Accordingly, if given a "determinate sentence, the trial court [w]ould either release [C.C.] to parole under TDCJ[]'s supervision or

8

transfer him to TDCJ[] for continued confinement." *In re D.O.R.*, 2021 WL 115772, at *1 (third and fourth alterations in original) (quoting *In re M.C.*, 502 S.W.3d at 855). "[A] transfer/release hearing conducted under Section 54.11 is a 'second chance hearing' that gives juveniles—who have previously been sentenced to a determinate number of years—a second chance to persuade the court that they should not be imprisoned." *Id.* (alteration in original) (quoting *In re A.V.*, No. 11-18-00135-CV, 2020 WL 2836432, at *2 (Tex. App.—Eastland May 29, 2020, no pet.) (mem. op.) (quoting *In re D.L.*, 198 S.W.3d 228, 230 (Tex. App.—San Antonio 2006, pet. denied))). The last paragraph discussed the second-chance hearing and properly informed the jury that the issue of parole would be raised at that hearing. Consequently, we reject C.C.'s argument that the jury charge contained any other error or otherwise demonstrated egregious harm.

As for the state of evidence, C.C. admitted that he unlawfully restrained B.W., a child, and that he intentionally and knowingly (1) "cause[d] the penetration of the vagina of B.W . . . with [his] sexual organ," (2) "cause[d] the sexual organ of B.W. . . . to make contact with [his] mouth," and "cause[d] the sexual organ of B.W . . . to contact [his] sexual organ." At trial, twelve-year-old B.W. testified that C.C.'s abuse began when she was five or six years old. B.W. said that C.C. would confine her to a room and would not let her leave until he either performed oral sex on her, penetrated her anus with his fingers, or penetrated her anus or vagina with his penis. B.W. said that C.C. committed each of those acts and that at least one act was committed against her weekly for four years. C.C. admitted his offenses against B.W. at trial.[2] As a result, the state of the evidence was strong and weighs against finding egregious harm.

_____

[2]C.C. argued that B.W. fabricated the number of times he had abused her.

9

Next, C.C. argues that the following portion of the State's argument "took advantage of the misleading instruction and used it to urge the jury to assess a harsher sentence":

> [B.W.] deserves to have the opportunity to finish her childhood, to finish growing up and reach the age of 18 without having to worry about [C.C]. Not having to worry about him being in a restaurant or on the streets or avoiding places where he might be. [B.W.] deserves the chance to finally be a kid. And the only way she's going to get that is by incarceration. That's why we would ask that when you sentence [C.C.], that you would sentence him to no less than 25 years. So that way there's no possibility of him getting out before she reaches 18.

The State's argument was made in response to C.C.'s plea for probation, and we see nothing in this argument suggesting the imposition of a harsher sentence based on jury-charge error as opposed to the facts of the case before the jury. Also, neither good conduct time nor parole was mentioned during closing arguments. As a result, we find nothing in the jury argument that would support a finding of egregious harm.

Last, there is nothing else in the record indicating that the jury considered the application of good conduct time. There were no jury notes regarding good conduct time and nothing in the record supports a conclusion that it was applied in the assessment of C.C.'s sentence. *See Murrieta*, 578 S.W.3d at 556. Even so, C.C. argues that harsh punishment was unwarranted because he had no prior criminal history, received sex-offender treatment, and expressed remorse for his actions, which began when he was eleven years old. While C.C. had no prior criminal history, the jury heard of many extraneous acts of sexual abuse committed against B.W. over the course of four years and was entitled to consider those extraneous acts in setting punishment. Moreover, the jury assessed eight months' confinement for unlawful restraint, and the jury's

verdict for each count of aggravated sexual assault of B.W. fell well below the maximum sentence for each offense and assessed less punishment than the State recommended.

After reviewing the entire jury charge, the state of the evidence, the argument of counsel, and the remaining record, we conclude that C.C. was not egregiously harmed by the jury-charge error on punishment. Accordingly, we overrule his last point of error.

## III.     Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     January 26, 2023
Date Decided:       February 10, 2023