ACCEPTED
15-25-00069-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/23/2025 3:15 PM
CHRISTOPHER A. PRINE
CLERK

No.  15-25-00069-CV

**IN THE**

**COURT OF APPEALS FOR THE**

**FIFTEENTH APPELLATE DISTRICT**

**SITTING AT AUSTIN, TEXAS**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/23/2025 3:15:22 PM
CHRISTOPHER A. PRINE
Clerk

_____

IN THE MATTER OF P.P., A JUVENILE

_____

AN APPEAL OF AN ORDER OF TRANSFER TO THE
TEXAS DEPARTMENT OF CRIMINAL JUSTICE – INSTITUTIONAL DIVISION

CAUSE NO.  2022-65-J
FROM THE 474TH JUDICIAL DISTRICT COURT OF
MCLENNAN COUNTY, TEXAS

_____

**STATE'S BRIEF**

_____

JOSH TETENS
Criminal District Attorney
McLennan County, Texas

STERLING HARMON
Appellate Chief
State Bar No. 09019700
219 North 6th Street, Suite 200
Waco, Texas 76701
[Tel.] (254) 757-5084
[Fax] (254) 757-5021
[Email]
sterling.harmon@mclennan.gov

**ORAL ARGUMENT NOT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant**  P.P., a Juvenile

**Appellant's Attorney at Hearing**  Mr. Sam Martinez
1105 Wooded Acres, Suite 200
Waco, Texas  76703

**Appellant's Attorney on Appeal**  Mr. Stan Schwieger
600 Austin Avenue, Suite 12
Waco, Texas  76701

**State's Attorney at Hearing**  Mr. John Wiersgalla
Assistant Criminal District Attorney
219 North Sixth Street, Suite 200
Waco, Texas 76701

**State's Attorney on Appeal**  Mr. Sterling Harmon
Assistant Criminal District Attorney
219 North Sixth Street, Suite 200
Waco, Texas 76701

# Table of Contents

Identity of Parties and Counsel…………………………………………………………ii

Table of Contents ..................................................................................................iii

Table of Authorities…………...…………………………………………………... v

Statement of the Case…..……………………………………………….. vii

Statement Regarding Oral Argument…..……………………………………. vii

Issues ...…………………………………………………………………… vii

Summary of Argument…..…………………………………………………….. vii

Statement of Facts…..…………………………………………………….. 1

    Procedural History …………………………………………………. 1

    Hearing …………………………………………………………….. 1

        Alanna Bennett …………………………………………….................. 2

        Marie Powell …………………………………………………….. 4

        Teresa Gonzalez …………………………………………………. 5

        State's First Close ………………………………………………….. 6

        Appellant's Close ………………………………………………….. 7

        State's Final Close …………………………………………………….. 7

        Court's Ruling ………………………………………………. 7

      Order …………………………………………………………….. 7

Argument …………………………………………………………… 10

Summary of Argument …………………………………………………… 10

Point of Error:  Appellant Was Not Denied Due Process Because the
    Order of Transfer Fails to Reflect "Guided Discretion" Necessary
    for Meaningful Appellate Review  …………………………………..  10

    Preservation  ……………………………………………………  10

    Standard of Review  ……………………………………………..  12

    Analysis  ………………………………………………………..  13

    The Record Allows for Sufficient Review  …………………….…  15

Prayer  …………………………………………………………….…  18

Certificate of Compliance  …………………………………………….  19

Certificate of Service  …………………………………………………  19

# TABLE OF AUTHORITIES

**Federal Opinions**

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,*
   490 F. 3d 718 (9th Cir. 2007) ……………………………………..    16

*Kent v. United States,* 383 U.S. 541 (1966) …   17, 18

*Traxler v. Multnomah County,* 596 F. 3d 1007 (9th Cir. 2010) …………..    16


**Texas State Opinions**

*Darcy v. State,* 488 S.W. 3d 325 (Tex. Crim. App. 2016) …………………    10

*Ex parte Beck,* 541 S.W. 3d 846 (Tex. Crim. App. 2017) …………………    11

*Ex parte Thomas,* 623 S.W. 3d 370 (Tex. Crim. App. 2021) ………………    18

*Fuller v. State,* 253 S.W. 3d 220 (Tex. Crim. App. 2008) …………………    11

*Grado v. State,* 445 S.W. 3d 736 (Tex. Crim. App. 2014) …………………    11

*In re B.L.D and B.R.D.,* 113 S.W. 3d 340 (Tex. 2003) ……………………    10

*In re J.D.P.,* 149 S.W. 3d 790 (Tex. App. – Fort Worth 2004, *no pet.*) ….    12

*In re N.K.M.,* 387 S.W. 3d 859 (Tex. App. – San Antonio 2012,
   *no pet.*) …………………………………………………………   12, 13

*Marin v. State,* 851 S.W. 2d 275 (Tex. Crim. App. 1993) …………………   11

*Matter of A.G.,* No. 10-16-00268-CV, 2017 WL 1452847 (Tex. App. –
   Waco Apr. 19, 2017, *rev. den'd*) ………………………………    vii, 15, 17

*Matter of M.C.,* 502 S.W. 3d 852 (Tex. App. – Texarkana 2016,
   *rev. den'd*) …………………………………………………   vii, 15, 17

*Moon v. State,* 451 S.W. 3d 28 (Tex. Crim. App. 2014) ………………..   17, 18

*Proenza v. State,* 541 S.W. 3d 786 (Tex. Crim. App. 2017) ………………..   11

*Saldano v. State,* 70 S.W. 3d 873 (Tex. Crim. App. 2002) …………………   11


**Statutes**

*Tex. Fam. Code* §53.045 ……………………………………………..    8

*Tex. Fam. Code* §54.04 ………………………………………………..    8

*Tex. Fam. Code* §54.11 ………………………………………….   *passim*

*Tex. Hum. Res. Code* §244.014 ……………………………………   7, 13

**Rules**

*Tex. R. App. P.* 9.4 ………………………………………………….. 19

*Tex. R. App. P.* 33.1 ………………………………………………… 11

## Statement of the Case

Appellant asserts that he was denied due process in that the Order of Transfer failed to state "articulated findings or reasoning" reflecting "guided discretion," allowing for "meaningful appellate review" of the Order of Transfer. (referencing *Appellant's Brief* at 5).

## Statement Regarding Oral Argument

Appellant's issue is a reiteration of a claim Appellant's counsel has raised and had rejected in virtually identical cases, including the referring Tenth Court of Appeals. (*See, e.g. Matter of M.C.*, 502 S.W. 3d 852 (Tex. App. – Texarkana 2016, *rev. den'd*); *Matter of A.G.*, No. 10-16-00268-CV, 2017 WL 1452847 (Tex. App. – Waco Apr. 19, 2017, *rev. den'd*). The issue is determinable by the record and established precedent, and the Court's deliberative process would not be appreciably assisted by oral argument.

## Issue

Whether Appellant has been denied due process because the Order of Transfer fails to reflect guided discretion which would allow for meaningful appellate review?

## SUMMARY OF ARGUMENT

The Order of Transfer complies with legislative requirements, reflecting adherence to the guiding rules and principles suggested by Family Code §54.11; the record is sufficient for the Court to review the findings contained in the Order of Transfer so as to satisfy of due process.

STATEMENT OF FACTS

**Procedural History**

The original Petition for Determinate Sentencing alleged that Appellant, a 14-year-old, had committed an act constituting the offense of Aggravated Assault. (CR I – 7-9). A grand jury certified the Petition. (CR I – 12-13). On June 27, 2022 Appellant was adjudicated and committed to the Texas Juvenile Justice Department for a term of ten years. (CR I – 36-37; 42-43; 67-68). Appended to the plea paperwork were a Social History (CR I – 44-60), and a psychological evaluation (CR I – 61-66). On June 13, 2024, the Court approved Appellant's release on TJJD Parole. (CR I – 80). By its letter of January 29, 2025, the TJJD requested a hearing to determine whether Appellant should be transferred to the Texas Department of Criminal Justice – Institutional Division (CR I – 82). The request was formalized with a State's Motion filed February 25, 2025. (CR I – 84). Hearing was set for March 13, 2025. (CR I – 85-86). By letter dated March 6, 2025, TJJD Liaison Alanna Bennett advised the Court that she would be appearing on behalf of the Department. (CR I – 94). Appended to the letter were copies of Appellant's casework Masterfile and security file. (CR I – 95-100).

**Hearing**

The Court admonished Appellant, who understood the purpose of the hearing, his right to remain silent and not incriminate himself, his right to call witnesses and cross-examine the State's witnesses, and his right to

counsel in the event of appeal. (RR I – 5). Appellant acknowledged that he had been afforded adequate time to consult with his counsel. (RR I – 6).

*Alanna Bennett*

Bennett, the TJJD court liaison, was familiar with the case. (RR I – 6-7). Appellant had been adjudicated on an aggravated assault wherein he stabbed the victim twice before fleeing the scene. (RR I – 7). Appellant was released on parole on June 10, 2024. (RR I – 7, 8-9). Parole was revoked on January 28, 2025 when Appellant was found in possession of a gun; he had also posted a picture of himself on social media holding the gun. (RR I – 7). The Department recommended transfer to TDCJ. (RR I – 7-8). That recommendation was based on the facts that Appellant had done well in the highly-restricted environment of TJJD such that he was granted parole, but once in the community, he became a danger and was revoked. (RR I – 8). If Appellant were again released on parole, he would still be a danger to the community. (RR I – 8).

Bennett agreed that while on parole, Appellant had generally abided by his conditions, performed community service, took his medications, furthered his education, and completed drug and alcohol follow-up treatments. (RR I – 10). The TJJD administrative hearing recommended a sanction of a minimum three-month stay in TJJD. (RR I – 11). Bennett explained that since Appellant had originally done well while in TJJD, it was expected that he would do well again, and again make parole; yet he would be in the same situation should he be released. (RR I – 11-12). "Our

concern is not necessarily that he won't follow parole conditions. Our concern is that he's a danger based on his connections in the community that pose a threat to him, his family, as well as the rest of the community." (RR I – 12). This was based on the information contained in the master file relating to all aspects of Appellant's history in the community. (RR I – 12). Appellant's parole officer had received information that the victim and some of his associates had tried to retaliate against Appellant and his family. (RR I – 12). Appellant had also threatened his girlfriend not to talk about him having a gun. (RR I – 12). The parole officer had witnessed an intake with Appellant which indicated a shooting toward his family's apartment on account of the stabbing victim. (RR I – 12). Appellant had a propensity for gun possession, illustrated by his appearing with a gun in social media, indicating "that's not something he's willing to give up once he goes back into the community." (RR I – 12). If returned to TJJD custody, and he met the criteria for parole, the Department would have no option but to put Appellant on parole; "we can't just house him until he's 19." (RR I – 13).

The Department had information that suggested Appellant had a gang affiliation. (RR I – 14). Bennett exemplified Appellant's threat to his girlfriend as being a threat to shoot up her home. (RR I – 15).

The State rested. (RR I – 15).

3

*Marie Powell*

Appellant called his mother, Marie Powell. (RR I – 16). The family had sold their home, wanting to get out of Waco in anticipation that Appellant was going to be released. (RR I – 17). Powell protested that Appellant was a "great kid," doing "awesome" on parole, doing his community service, never missing an appointment with his parole officer, and never failing a drug test. (RR I – 18). He had tried to work a job, but the victim found out where he worked and began harassing him, so he quit. (RR I – 18). Appellant never missed curfew and attended school full time. (RR I – 18).

Powell confirmed that Appellant had a girlfriend, but "I didn't like her." (RR I – 18). Their relationship was great at first, until the girl gave Appellant an STD and they broke up. (RR I – 18-19). Powell didn't consider her a reliable person. (RR I – 19). She couldn't say if she had ever been in trouble before, but she had been in alternative school. (RR I – 19-20).

Powell claimed that the gun confiscated by the police was her husband's, and was not the same gun Appellant was holding in the social media picture. (RR I – 20-21). Powell then protested that the guns in her house belonged to her other son, who was "a gun fanatic." (RR I – 21). According to Powell, the parole officer knew there were guns in the house "and we just had to get rid of them… and we just didn't get rid of them in

4

time." (RR I – 21). As far as she had seen, Appellant had not committed any criminal offenses while on parole. (RR I – 23).

Powell blamed her husband for leaving the gun in Appellant's room. (RR I – 24-25). She claimed that her husband had been drinking the night before, and he knew that Appellant wasn't supposed to have a gun. (RR I – 24-25). Powell described the search of the home, claiming that officers came to the house at 8:00 in the morning, "banging all crazy." (RR I – 27). They demanded to see Appellant and Powell begged them not to hurt her son. (RR I – 27). The officers handcuffed Appellant and left him outside in 24-degree weather while they searched the house. (RR I – 27). Powell denied that she was saying the police lied in their report, because she didn't know what they said. (RR I – 27).

*Teresa Gonzalez*

Gonzalez was Appellant's parole officer. (RR I – 29). He did well on parole, the only issue being possession of the gun. (RR I – 29). Appellant's parents knew he was not supposed to have a gun, and Gonzalez first became aware that there was a gun in the home when she saw the picture on social media. (RR I – 29-30). This was on January 2, 2025, and Appellant was picked up on January 6th. (RR I – 30). The previous November, Appellant's brother had killed himself and Appellant went into a depression. (RR I – 31). Gonzalez testified that some of the other kids in his school were making fun of Appellant during this time, and she gave him two weeks' excuse from attending school. (RR I – 31). Gonzalez

5

confirmed that the concern was not Appellant's compliance with parole rules, but rather the gun possession and threats he had made toward the girlfriend, her family, and threats to harm himself. (RR I – 31). After the arrest, Appellant's mother had explained that she and the father had taken Appellant shooting so that he would know how to shoot and handle a gun; and that he had possession of a gun because he feared retaliation. (RR I – 32). Accordingly, there were concerns that Appellant posed a threat to the community and to himself. (RR I – 32).

Gonzalez had spoken to Appellant's girlfriend and her mother, confirming that Appellant had indeed threatened her; these threats were made directly, and not through social media. (RR I – 32). Contrary to Appellant's mother's testimony, the gun recovered from Appellant's home was the same one shown in the social media picture, as testified to at the administrative hearing by the OIG officer. (RR I – 33).

Appellant rested. (RR I – 33).

### State's First Close

Appellant had lasted only seven months on parole before he was found possessing a firearm. (RR I – 34). This was concerning not only because of the nature of his aggravated assault offense, but also because of his gang affiliation, the threats against his girlfriend, and his threats to harm himself. (RR I – 34). Appellant obviously required a highly structured environment and it would be dangerous to release him on parole. (RR I – 34).

6

*Appellant's Close*

The administrative hearing determined a sanction of only three months, and Appellant should be allowed that sanction in the custody of TJJD. (RR I – 34). He had not been charged with a new criminal offense, and his actions arose in response to retaliation from other individuals. (RR I – 35). The guns had been gotten rid of, so Appellant no longer posed a threat. (RR I – 35).

*State's Final Close*

The mother's testimony showed that Appellant's family gave him access to loaded firearms, that they were not doing the things necessary to protect the public from him. Appellant was a danger and he needed to be transferred.

*Court's Ruling*

The Court took judicial notice of the master file and summary report submitted by the court liaison. (RR I – 35). He then ordered transfer to the Texas Department of Criminal Justice – Institutional Division. (RR I – 35-36). Appellant was advised of his right of appeal. (RR I – 36).

**Order**

The Order of Transfer noted the appearance of Appellant and counsel for the parties, and invoked the Court's authority pursuant to §244.014 of the Human Resources Code and §54.11 of the Texas Family Code. (CR I – 102). The Order recited that Appellant was given proper admonishments and advisories. (CR I – 102).

The Court elaborated on the matters it considered in evaluating the hearing evidence:

1. The experiences and character of the Respondent before and after commitment to the Texas Juvenile Justice Department;
2. The nature of the penal offenses that the Respondent was found to have committed and the manner in which the offenses were committed;
3. The ability of Respondent to contribute to society;
4. The protection of the victim or any members of the victim's family;
5. Recommendations of the Juvenile Justice Department and Prosecuting Attorney;
6. The best interests of Respondent; and,
7. Any other factor relevant to the issue to be decided.

(CR I – 102-103).

The Court then enunciated its findings:

1. A Certification of Approval of Petition by the Grand Jury was signed, granting this Court the authority to find a disposition of Determinate Sentencing.
2. At an adjudication hearing on the 27th day of June, 2022, Respondent was found to have engaged in Delinquent Conduct, which occurred on or about the 26th day of March, 2022, for ONE (1) Count of AGGRAVATED ASSAULT, in violation of Section 29.03 of the Texas Penal Code. At the disposition hearing that followed, Respondent was sentenced to a determinate sentence of TEN (10) YEARS and committed to the care, custody and control of the Texas Juvenile Justice Department in accordance with Sections 53.045 and 54.04 of the Texas Family Code. Said determinate sentence was subject to a possible transfer to the Texas Department of Criminal Justice-Institutional Division pursuant to Section 54.11 of the Texas Family Code.

3. A Transfer Hearing was held by this Court to determine the appropriateness and necessity of transferring Respondent to the Texas Department of Criminal Justice – Institutional Division for the remainder of the TEN (10) YEAR Determinate Sentence.
4. The Respondent is a MALE child who was born on the 3rd day of January, 2008, is currently 17 years of age, and is presently in the custody of the Texas Juvenile Justice Department.
5. The proper notice requirements of Section 54.11 of the Texas Family Code have been satisfied, and proper notification of the parties that the hearing was for the purpose of a Transfer Hearing were served on the Respondent, Respondent's Attorney, and the Texas Juvenile Justice Department.
6. Prior to the hearing, Respondent's Attorney was provided access to all written matter to be considered by this Court.
7. At the hearing, this Court considered written reports from the Texas Juvenile Justice Department, probation officers, and professional court employees, in addition to witness testimony.
8. The Court considered the experience and character of the Respondent, both before and after commitment to the Texas Juvenile Justice Department, and finds that the Respondent is of sufficient intellectual abilities and sophistication to be committed at the Texas Department of Criminal Justice-Institutional Division.
9. The Court has considered the nature of the penal offenses-aggravated First Degree Felonies.
10. The Court considered the manner in which the offenses were committed.
11. The Court considered the ability of Respondent to contribute to society.
12. The Court considered the protection of the victim or any member of the victim's family as well as the protection of the community.
13. The court considered the recommendations of the Texas Juvenile Justice Department and the Prosecuting Attorney – both of which recommended transfer to the Texas Department of Criminal Justice-Institutional Division.

14. The Court is of the opinion that it is in the best interest of the Respondent, and of society, that Respondent be placed in the custody of the Texas Department of Criminal Justice-Institutional Division for the remainder of the TEN (10) YEAR Determinate Sentence.

(CR I – 103-105).

# ARGUMENT

## SUMMARY OF ARGUMENT

The Order of Transfer complies with legislative requirements, reflecting adherence to the guiding rules and principles suggested by Family Code §54.11; the record is sufficient for the Court to review the findings contained in the Order of Transfer so as to satisfy due process.

**Point of Error:  Appellant Was Not Denied Due Process Because the Order of Transfer Fails to Reflect "Guided Discretion" Necessary for Meaningful Appellate Review**

**Preservation[1]**

Appellant does not address preservation of his complaint that the Transfer Order denied him due process because it failed to reflect "guided discretion" as to how the Court arrived at its conclusions.

Preservation is a systemic requirement, and a conviction cannot be reversed unless the reviewing court has first addressed error preservation. *Darcy v. State*, 488 S.W. 3d 325, 327-28 (Tex. Crim. App. 2016).

---

[1] The Texas Supreme Court has held that juvenile delinquency proceedings are "quasi-criminal" in nature and therefore criminal rules of procedure must be looked to for guidance. *In re B.L.D. and B.R.D.*, 113 S.W. 3d 340, 351 (Tex. 2003).

A timely complaint at trial is necessary to preserve a complaint for appeal. *Tex. R. App. P.* 33.1; *Grado v. State*, 445 S.W. 3d 736, 738-39 (Tex. Crim. App. 2014). Almost all errors, including constitutional errors, may be forfeited by the failure to object. *Fuller v. State*, 253 S.W. 3d 220, 232 (Tex. Crim. App. 2008).

The exceptions to the general rule of preservation are set out in *Marin v. State*, 851 S.W. 2d 275 (Tex. Crim. App. 1993). *Marin* articulated three categories of rights: (1) absolute requirements or prohibitions, (2) rights that are waivable-only, and (3) rights that can be forfeited. *Ex parte Beck*, 541 S.W. 3d 836, 853 (Tex. Crim. App. 2017). Texas courts recognize no "fundamental error" exception outside of the *Marin* framework. *Proenza v. State*, 541 S.W. 3d 786, 793-94 (Tex. Crim. App. 2017). Only errors that fall within the first two *Marin* categories are exempt from the objection requirement. *Saldano v. State*, 70 S.W. 3d 873, 888-89 (Tex. Crim. App. 2002). The Court of Criminal Appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant." *Fuller* at 232; *Saldano* at 889.

While it might be argued that a deprivation of "due process" concerns an "absolute requirement or prohibition" under *Marin*, Appellant's specific complaint is the manner in which he was deprived of due process, namely that the Transfer Order did not contain sufficient information to allow

11

meaningful appellate review. The State's Motion Requesting Hearing specified a hearing under Family Code §54.11, which is clear as to what actions are required of the hearing court. Also, as noted throughout this brief, Appellant's claim is not novel, and he was on notice of the need to preserve his claim through a timely and proper motion or objection. Yet Appellant registered no objections and filed no motions addressing either the general nature of a transfer order entered pursuant to Family Code §54.11, or the specific contents of the Order entered in the instant case. He could have done so before, during, or after the hearing while the hearing court retained plenary authority to address any complaint. Appellant has failed to preserve error, and thus waived any complaint on appeal.

Nevertheless, Appellant's complaint is without merit.

**Standard of Review**

A trial court's decision to transfer a juvenile from TJJD to TDCJ is reviewed for an abuse of discretion. *In re J.D.P.*, 149 S.W. 3d 790, 792 (Tex. App.—Fort Worth 2004, *no pet.*). The entire record is reviewed to determine whether the trial court acted arbitrarily or without reference to any guiding rules and principles. *In re N.K.M.*, 387 S.W. 3d 859, 864 (Tex. App.—San Antonio 2012, *no pet.*). The trial court's decision will be upheld if the record contains some evidence to support it. *Id.*

After a juvenile with a determinate sentence reaches the age of sixteen, but before reaching the age of nineteen, TJJD may request an order approving the transfer of the juvenile to TDCJ if the sentence has not been

12

completed and the juvenile poses a continuing risk to the community's welfare. *Tex. Hum. Res. Code* §244.014(a). The juvenile court must conduct a hearing to make this determination. *Tex. Fam. Code* §54.11(a). When conducting a transfer hearing, a trial court may consider written reports provided by probation officers, professional consultants, and employees of TJJD, in addition to the testimony of witnesses. *Id.* §54.11(d). In making its determination, the court may consider the experiences and character of the person before and after commitment to TJJD, the nature of the penal offense the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of TJJD and the prosecuting attorney, the best interests of the person, and any other relevant factor. *Id.* §54.11(k). The court is not obliged to consider all of the factors listed, and it may consider relevant factors not listed. *In re N.K.M.* at 864. Additionally, the court can assign differing weights to the factors considered. *Id.*

**Analysis**

The State's evidence at hearing was the testimony of the court liaison, Ms. Bennett; and the parole officer, Ms. Gonzalez. Though Appellant had generally followed the parole rules, it was undisputed that Appellant had accessed firearms. Bennett and Gonzalez testified that Appellant had gang affiliations and there were still threats and recriminations coming from the original stabbing victim and his associates. Gonzalez had interviewed

13

Appellant's girlfriend and her mother, who confirmed his threats to shoot up their house if she ever told about him having a gun. Appellant's mother protested that Appellant was a "good kid," but her rationalizations about him having a gun were not credible. Ms. Gonzalez' testimony rebutted the notion that she was aware of guns being in the home, and that Appellant's parents were unaware of the prohibition. Ms. Gonzalez further rebutted the mother's testimony that the gun recovered from the home was not the same gun shown on social media. The State's argument focused on the nature of the underlying aggravated assault, Appellant's attraction to and possession of firearms, and his associations suggesting the distinct possibility that he would use them against the vengeful victim or his associates, or against his girlfriend. Further, it was shown that Appellant's parents had not been, and would likely not be, a reliable protective resource should he be again released on parole.

The Court made findings and considerations mirroring those enunciated in Family Code §54.11(k):

> "In making a determination under this section, the court may consider the experiences and character of the person before and after commitment to the Texas Juvenile Justice Department or post-adjudication secure correctional facility, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the Texas Juvenile Justice Department, county juvenile board, local juvenile

14

probation department, and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

The record supports those findings. The Court clearly arrived at its transfer decision with reference to guiding rules and principles set out in the Texas Family Code, and did not abuse its discretion.

## The Record Allows for Sufficient Review

The record, along with the findings and conclusions contained in the transfer order, are sufficient to allow this Court to conduct its review. Appellant does not contest this as such, but rather complains that a different standard applicable to "guided discretion" be applied. Appellant's counsel has raised this argument in at least two virtually identical cases, with the reviewing courts rejecting it both times. *Matter of M.C.,* 502 S.W. 3d 852 (Tex. App. – Texarkana 2016, *rev. den'd*); *Matter of A.G.,* No. 10-16-00268-CV, 2017 WL 1452847 (Tex. App. Waco Apr. 19, 2017, *rev. den'd*).

In *M.C.,* the Texarkana court provided the following analysis:

M.C.'s appellate complaint is not that the trial court abused its discretion in its ruling; but rather the court's findings are insufficient for this Court to adequately review the trial court's order. While claiming not to "question the applicability of the abuse of discretion standard" to the situation at bar, M.C. offers no binding authority for the applicability of any other standard of review. Instead, he argues, "True discretionary questions are nearly unreviewable because no standard exists by which to measure it for reasonableness." M.C. would, instead, have us review the trial court's decision for an "abuse of 'guided' discretion": "A trial court's discretion can be 'guided' by

15

the creation of statutes or such other structures designed to channel the trial court's decision. Thus, a trial court's sentencing decision is discretionary, but it is also governed by legal standards that closely inform or guide discretion." M.C. argues that Texas' abuse of discretion standard, whether the trial court acted without reference to any guiding rules or principles, is insufficient for his proposed "guided abuse of discretion" review. Leaving aside the fact that he provides no Texas authority for his proposed review standard, the record here provides ample evidence of the trial court's reference to guiding rules or principles, namely, the suggested considerations of Section 54.11(k) quoted above. The court references the statute's proposed criteria, and the court's findings are supported by the record we have summarized.

M.C. also argues that the use of the abuse of discretion standard violates his due process rights. He states, "[T]he standard of review as interpreted by this State's courts governing the transfer decision effectively results in the appellate courts being nothing more than a judicial speed bump." In this argument, he directs us to language from a federal Ninth Circuit case which stands for the proposition that where a "district court does not explain its reasoning," the appellate court is precluded from properly reviewing the lower court's ruling. *See Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F. 3d 718, 725 (9th Cir. 2007).[2] There, the trial court gave no reason for granting stays to the parties. That, however, is not the situation here; as we have noted, the trial court in this case listed factors which it took into consideration, and those factors mirror those suggested by the Texas Family Code. We disagree with M.C.'s argument that we are unable to review the trial court's decision to transfer M.C. to confinement in TDCJ-CID. The record is sufficient and supports the trial court's findings. Accordingly, the trial court did not abuse its

---

[2] Appellant does not cite this case in his instant brief. Rather, he cites *Traxler v. Multnomah County*, 596 F. 3d 1007, 1016 (9th Cir. 2010), which cites *Blue Cross* and adopts it reasoning.

discretion.  M.C. has not shown a due process violation. *Matter of M.C.,* 502 S.W. 3d 852, 857–58 (Tex. App. – Texarkana 2016, *rev. den'd*).

The Waco Court of Appeals followed suit in *Matter of A.G.,* noting "meaningful appellate review for abuse of discretion is foreclosed when the district court fails to articulate its reasoning."

> The Texarkana Court of Appeals rejected the "abuse of guided discretion" review in *In the Matter of M.C.*, 502 S.W. 3d 852, 858 (Tex. App.–Texarkana 2016, *pet. den'd.*).  The Texarkana Court of Appeals further rejected the argument that the abuse of discretion standard violated M.C.'s due process rights.  *In the Matter of M.C.*, 502 S.W. 3d at 857–858.  We agree with the Texarkana Court of Appeals and decline to adopt the "abuse of guided discretion" standard.

*Matter of A.G.,* No. 10-16-00268-CV, 2017 WL 1452847, at *1 (Tex. App. – Waco Apr. 19, 2017, *rev. den'd*).

Finally, in support of his "guided discretion" thesis, Appellant invokes the admonition from the Texas Court of Criminal Appeals in *Moon v. State,* 451 S.W. 3d 28, 38 (Tex. Crim. App. 2014) that a trial court should "take pains to spread its deliberative process on the record."  (*Appellant's Brief* at 12.)  But the Court of Criminal Appeals has expressly overruled *Moon*:

> *Moon* thus constituted a significant expansion of *Kent[v. United States*, 383 U.S. 541 (1966)] by requiring case-specific fact findings to support a transfer order.  Detailed findings are certainly preferable and helpful to keep the appellate court from having "to rummage through the record for facts that the juvenile court might have found, given the

evidence developed at the transfer hearing, but did not include in its written transfer order." But it's the hearing itself that prevents the transfer process from being arbitrary; the case-specific fact-findings are not necessary to protect a fundamental constitutional right. *Kent* does not hold otherwise. To the extent that language in *Moon* suggests that such findings are a fundamental constitutional right, we disavow that language.

<div align="center">So What is Left of <em>Moon</em>?</div>

Nothing.

*Ex parte Thomas*, 623 S.W. 3d 370, 381 (Tex. Crim. App. 2021) (internal cites omitted).

<div align="center">

**PRAYER**

</div>

For the foregoing reasons, the State of Texas prays that this Honorable Court affirm the Order of Transfer, and for such other and further relief as may be provided by law.

<div style="margin-left:40%">

Respectfully Submitted:
**JOSH TETENS**
Criminal District Attorney
McLennan County, Texas
/s/ Sterling Harmon
**STERLING HARMON**
Appellate Chief
219 North Sixth Street, Suite 200
Waco, Texas 76701
[Tel.] (254) 757-5084
[Fax] (254) 757-5021
[Email]
sterling.harmon@mclennan.gov
State Bar No. 09019700

</div>

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of *Tex. R. App. P.* 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of *Tex. R. App. P.* 9.4(i), if applicable, because it contains 4,555 words, excluding any parts exempted by *Tex. R. App. P.* 9.4(i)(1).

## CERTIFICATE OF SERVICE

I certify that I caused to be served a true and correct copy of this State's Brief by eservice or email on Appellant's attorney of record, Stan Schwieger, at [wacocrimatty@yahoo.com](mailto:wacocrimatty@yahoo.com).

DATE: 7/23/2025                    /s/ Sterling Harmon
                                   STERLING HARMON

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sterling Harmon
Bar No. 9019700
sterling.harmon@co.mclennan.tx.us
Envelope ID: 103501588
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: State's Brief
Status as of 7/23/2025 3:22 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sterling Harmon | | sterling.harmon@mclennan.gov | 7/23/2025 3:15:22 PM | SENT |
| Josh Tetens | | josh.tetens@mclennan.gov | 7/23/2025 3:15:22 PM | SENT |
| Kirsty Koopmans | | kirsty.koopmans@mclennan.gov | 7/23/2025 3:15:22 PM | SENT |